UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CLARINDA L. JOHNSTON, ) ) Plaintiff, ) ) v. ) ) CAROLYN W. COLVIN, Acting ) Commissioner of Social Security, ) ) Defendant. ) _____ ) | Case No. EDCV14-1896 AJW MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2-4]. In a February 7, 2013 written hearing decision that constitutes the Commissioner's final decision in this matter, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of light work. The ALJ further determined that plaintiff's RFC did not preclude her from performing jobs that exist in significant numbers in the national economy. Accordingly, the ALJ found plaintiff not disabled at any time from July 1, 2005, her alleged onset date, through the date of the

1  ALJ's decision. [Administrative Record ("AR") 23-40].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Treichler v. Comm'r, Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

**Medical opinion evidence**

Plaintiff contends that the ALJ erred in evaluating the opinions of treating physician Khalid Ahmed, M.D., examining physician Manikanda Raja, M.D., and examining psychologists Loren Green, Ph.D. and Gene Burg, Ph.D. [JS 6-28].

A treating or examining physician's opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Where, however, a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion is entitled to controlling weight. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2. Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and

extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.

The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831.

The record in this case contains numerous conflicting medical treating, examining, and nonexamining source opinions. Accordingly, the ALJ was entitled to reject the treating and examining source opinions so long as he articulated specific and legitimate reasons supported by substantial evidence for doing so.

**Dr. Ahmed**

Dr. Ahmed, an orthopedist, treated plaintiff from May 2009 to December 2011 in connection with a work-related injury that was the subject of a workers' compensation case. [AR 29, 32, 861-905, 955-971, 983-986, 988-990, 1005-1007, 1013-1016]. In April 2010, Dr. Ahmed completed a multiple impairment questionnaire diagnosing plaintiff with cervical and lumbar disc herniation with radiculopathy, bilateral shoulder impingement, and mid-back strain. In support of those diagnoses, he cited a cervical spine MRI that was positive for disc protrusion and a shoulder MRI showing impingement syndrome. [AR 964-965]. He opined that plaintiff had numerous work-related functional limitations that effectively would preclude all work, including a likelihood that she would miss work more than three times a month due to her impairments. [AR 969-970].

In disability opinion letters dated August 2010 and December 2011, Dr. Ahmed reiterated his diagnoses and said that he based those diagnoses on MRIs and EMG/NCV (electromyography and nerve conduction velocity) studies. He noted that plaintiff also had migraine headaches, and that he was treating her with medications. He opined that plaintiff was unable to work and should receive social security

disability benefits. He also said that plaintiff was a candidate for cervical and lumbar spine surgery (cervical and lumbar arthrodesis with spinal instrumentation) and shoulder surgery (arthroscopic subacromial decompression), and that he had requested permission from the workers' compensation carrier to undertake those procedures. [AR 985-986, 1014-1016].

The ALJ articulated several reasons for rejecting Dr. Ahmed's disability opinions. First, he noted that Dr. Ahmed's disability opinion is not controlling and, under the Commissioner's regulations, is not entitled to the deference otherwise afforded a treating source opinion. Although Ninth Circuit law holds that a treating source opinion on the ultimate issue of disability is not binding on the Commissioner, the ALJ still must articulate specific, legitimate reasons supported by the record for rejecting a controverted treating source opinion. See Tonapetyan, 242 F.3d at 1148.

Second, the ALJ noted that the record lacked objective medical evidence supporting Dr. Ahmed's opinion that plaintiff's limitations were of disabling severity. Dr. Ahmed said that he based his disability opinion on MRI and EMG/NCV studies, but he did not specify the date of those studies. MRIs of plaintiff's lumbar spine taken in March 2009 and May 2009 at Dr. Ahmed's request were normal and revealed no evidence of disc herniation. Plaintiff's May 2009 left shoulder MRI was also normal.[AR 30-32, 888-889]. A May 2009 right shoulder MRI taken at Dr. Ahmed's request showed evidence of mechanical impingement but was not definitive; "clinical correlation [was] needed . . . ." [AR 890]. A June 2008 thoracic and cervical spine MRI report that Dr. Ahmed cited in his "permanent and stationary" workers' compensation reports showed only "mild degenerative disc changes" at C4/5 and "subtle" disc protrusion at C4/5 through C6/7. [See AR 30-31, 879, 1344-1345]. EMG and NCV studies of plaintiff's upper extremities conducted in June 2008 and July 2009 were normal. A June 2008 EMG study of her lower extremities was normal, while a concurrent NCV study showed only "borderline" left peroneal neuropathy. [AR 31, 223, 739-746]. Given Dr. Ahmed's stated reliance on the MRI and EMG/NCV results to support his disability opinion, the ALJ reasonably concluded that the broadly normal MRI and electrodiagnostic findings and relatively mild, inconclusive abnormalities detected by those diagnostic studies cast doubt on the reliability of Dr. Ahmed's opinion.

Third, the ALJ noted that Dr. Ahmed's opinion was inconsistent with the record as a whole. [AR 35]. Generalizing about the record in this case is difficult due to its size and the number of medical opinions

it contains; however, the ALJ did not err in concluding that Dr. Ahmed's opinion was inconsistent with other substantial treating and examining source evidence. Ian Brodie, M.D., another workers' compensation treating physician who reviewed the same imaging and diagnostic test results that Dr. Ahmed reviewed, who read reports from Dr. Ahmed, and who conducted his own physical and neurological examinations, reached very different conclusions about plaintiff's diagnoses and functional capacity. [AR 836-860]. He opined that plaintiff had post concussion headaches, chronic sprain/strain of the cervical spine with radiculopathy into the left upper extremity, and chronic sprain/strain of the thoracolumbar spine with midthoracic degenerative disc disease.  The only work restrictions he advised were a restriction from repetitive upward gaze and rotational movements of the head and neck. [AR 840-841].  A workers' compensation qualified medical examiner, Selwyn J. Patrick, M.D., conducted a comprehensive medical records review and performed his own physical and neurological examination, which yielded independent clinical findings that differed from those of Dr. Ahmed. [AR 816-835].  Dr. Patrick's diagnoses were status post closed head trauma without loss of consciousness, slight posttraumatic head syndrome/analgesic rebound headaches, and musculoligamentous sprain of the cervical and lumbar spine.  Dr. Patrick opined that plaintiff should be precluded from working at heights or on ladders and from working around dangerous and moving machinery. [AR 830].  Accordingly, the ALJ did not err in rejecting Dr. Ahmed's opinion in part because it is inconsistent with substantial medical evidence in the record as a whole.

Fourth, the ALJ noted that Dr. Ahmed's opinion demonstrates a lack of understanding of the social security disability program evidentiary requirements.  That factor is entitled to some weight considering that Dr. Ahmed wrote his medical reports using the California workers' compensation terminology, and his disability opinion letters assert in conclusory fashion that plaintiff "will need to avail" or is "entitled" social security disability benefits. [AR 986, 1015].     See 20 C.F.R. 404.1527(c)(6) (stating that the ALJ may consider "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has").  On the other hand, the multiple impairment questionnaire Dr. Ahmed completed is comprehensible in social security disability terms, and in any event the ALJ is required to draw reasonable inferences about a claimant's social security disability status from workers' compensation medical reports. See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); Perez v. Astrue, 831 F. Supp. 2d 1168, 1177 (C.D. Cal. 2011).  Accordingly, that factor was legitimate but not a specific reason for rejecting

Dr. Ahmed's opinion in the circumstances of this case.

Fifth, the ALJ cited plaintiff's "conservative treatment" with medication and the fact that she did not undergo "cervical or lumbar surgical procedures" as evidence that undermined the credibility of Dr. Ahmed's disability opinion. Plaintiff points out that Dr. Ahmed considered plaintiff a candidate for surgery. Since the recommended surgery was not approved by the workers' compensation insurance carrier and was never conducted, the evidence regarding its medical necessity is equivocal. Furthermore, treating physician Dr. Brodie stated that plaintiff "has received conservative care and treatment excepting for epidural injections." [AR 840]. Although not highly probative, plaintiff's relatively conservative treatment was a specific, legitimate reason, among others, supporting the ALJ's rejection of Dr. Ahmed's opinion that her impairments were totally disabling.

Faced with the difficult task of making sense of a voluminous medical record containing numerous sharply conflicting medical opinions, the ALJ's decision provides specific, legitimate reasons for rejecting Dr. Ahmed's controverted disability opinion.[1] As the Ninth Circuit emphasized in two recent decisions, "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.' Consequently, we leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Treichler, 775 F.3d at 1098 (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 621 (1966) and citing 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995)); accord, Brown-Hunter v. Colvin, — F.3d —, 2015 WL 6684997, at *4 (9th Cir. Nov. 3, 2015). The ALJ permissibly resolved the conflict between Dr. Ahmed's disability opinion and conflicting medical opinion

---

[1] The ALJ went to great lengths to develop and explore the record with plaintiff's representatives during the course of three administrative hearings. [See AR 55-190]. As defendant notes, during the first hearing, plaintiff's nonattorney representative from Binder & Binder, a disability law firm, conceded that there was weakness in the evidence supporting Dr. Ahmed's assessments. [See AR 57, 69 ("[O]kay, maybe Dr. Ahmed's assessment[s] weren't fully supported by the evidence of record . . . ."); AR 70 ("I'll be honest with you, yes Dr. Ahmed has treated [plaintiff] and . . . yes, there is a consideration to be taken that Dr. Ahmed is working for the patient . . . ."); AR 77-78 (agreeing with the ALJ's comment that aspects of Dr. Ahmed's assessments were "disturbing" and that more objective evidence was needed to support plaintiff's claim)].

evidence by articulating specific, legitimate reasons based on substantial evidence in the record.

**Dr. Raja**

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Raja, who conducted a consultative internal medicine examination at the Commissioner's request in March 2012. [AR 1191-1193]. He had a partial disability evaluation and a partial progress note, apparently from Dr. Ahmed, available for review. [AR 1191]. He opined that plaintiff had chronic headache, chronic back and neck pain, chronic anxiety, post-traumatic stress disorder, and chronic prescription opiate use. [AR 1191-1193]. He opined that plaintiff could perform a range of sedentary work. [AR 1193].

The ALJ concluded that Dr. Raja's opinion was not supported by the objective evidence and was inconsistent with the record as a whole. The ALJ noted that Dr. Raja documented only minimal abnormalities in his examination findings (primarily decreased range of joint motion), that the MRI and electrodiagnostic evidence discussed above showed only mild abnormalities, and that other physicians who had considered similar examination findings had not found plaintiff so limited. [AR 33, 35]. One such physician was treating physician Dr. Brodie, who found decreased range of motion in the cervical and lumbar spine but did not limit plaintiff to the extent that Dr. Raja did. [AR 836-859]. The ALJ articulated legally sufficient reasons for rejecting Dr. Raja's opinion.

**Drs. Green and Berg**

Plaintiff contends that the ALJ improperly rejected the opinions of Dr. Green, a workers' compensation examining psychologist, and Dr. Berg, a psychologist to whom plaintiff was referred by her attorney. [See JS 21-22; AR 601-617, 992-995]. The ALJ considered several examining and nonexamining source opinions regarding plaintiff's mental functional impairments. [AR 35-38]. He ultimately relied on the opinion of one of the Commissioner's consultative examiners, Oluwafemi Adeyemo, M.D., a board-certified psychiatrist and neurologist. [AR 37, 1155-1158].

The ALJ permissibly rejected the opinions of Drs. Green and Berg, who opined that plaintiff was unable to work due to depression and anxiety, in favor of Dr. Adeyemo, who concluded that plaintiff had mood disorder and adjustment disorder with mixed anxiety and depressed mood, and also had mild psychiatric limitations, none of which impaired her capacity to perform simple, repetitive tasks. [AR 35-36]. Since all three doctors were examining sources, the ALJ was not required to give special weight to any of

1  those opinions. Dr. Adeyemo's opinion was the most recent of the three, and he had reviewed Dr. Green's
2  January 2009 report. [AR 1155]. As the ALJ noted, all three doctors gave plaintiff a Global Assessment
3  of Function ("GAF") score of 55 or 56, which "is a rough estimate of an individual's psychological, social,
4  and occupational functioning used to reflect the individual's need for treatment" and which signifies
5  "moderate symptoms" or "any moderate difficulty in social, occupational, or school functioning." Garrison
6  v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014). [See AR 36-37, 612, 994, 1158]. Plaintiff was
7  psychiatrically hospitalized for three days in June 2012 due to suicidal thoughts and depression; however,
8  she denied any suicidal intent. She was discharged in stable condition on medication, and there is no
9  evidence that she had a recurrence of such symptoms.[2] [AR 35-36, 1533-1602]. The ALJ reasonably
10 concluded that Dr. Adeyemo's opinion that plaintiff could perform simple repetitive tasks was more
11 consistent with plaintiff's mental examination findings and GAF than the opinions of Drs. Green and Berg.
12 See Moriarty v. Colvin, 2013 WL 5651422, at *2 (C.D. Cal. Oct. 16, 2013) (holding that an ALJ permissibly
13 rejected a treating source opinion that the claimant was disabled due to depression because the physician
14 also gave the claimant a GAF score of 55, which "was consistent with the ability to perform simple
15 repetitive tasks").

**Vocational expert's testimony**

Plaintiff contends that the ALJ erred in finding that plaintiff could perform jobs classified by the Dictionary of Occupational Titles ("DOT") as requiring "Level 2" reasoning because the ALJ limited her to "simple, repetitive tasks." [JS 28-32].

At step five of the sequential evaluation procedure, the Commissioner has the burden of establishing, through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines, that the claimant can perform other jobs that exist in substantial numbers in the national economy. Bruton v. Massanari, 268 F.3d 824, 827 n.1 (9th Cir. 2001) (internal quotation marks omitted). "Where the testimony of a [vocational expert] is used at Step Five, the [vocational expert] must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational

---

[2] Plaintiff testified that she had been psychiatrically hospitalized "three or four times" since 1990, but there is no documentary evidence of those hospitalizations in the record nor any evidence that they occurred after plaintiff's alleged onset date. [AR 145-146].

1  qualifications would satisfy." Osenbrock v. Apfel, 240 F.3d 1157, 1162-1163 (9th Cir. 2001).

2  In his hypothetical questions to the vocational expert, the ALJ posited an individual who was limited as later described in his RFC finding, except that the hypothetical individual was limited to "unskilled" work rather than to "simple, repetitive tasks." The vocational expert testified that the hypothetical person could perform the unskilled jobs of small products assembler, DOT job number 706.684-022; office helper, DOT job number 239.567-010; and information clerk, DOT job number 237.367-018. [See AR 39, 114-121, 179-184].

3  The DOT classifies the jobs of small products assembler and office helper as requiring Level 2 reasoning, which requires the ability to use "common sense" to comply with "detailed but uninvolved instructions." "Uninvolved" means "not intricate or complex." The Random House College Dictionary, Revised Edition 704 (1980). Level 2 reasoning is consistent with the ability to perform simple, repetitive tasks, which the ALJ found plaintiff capable of performing. See Ranstrom v. Colvin, 2015 WL 7173238, at *2 (9th Cir. Nov. 16, 2015) (holding that there was no conflict between the ability to make simple decisions and follow short, simple instructions and the demands of Level 2 reasoning); Meissl v. Barnhart, 403 F. Supp. 2d 981, 982-984 (C.D. Cal. 2005) (holding that a claimant who was limited to "simple tasks performed at a routine or repetitive pace" was not precluded from performing an unskilled past job with a DOT reasoning level of 2); see also Rounds v. Comm'r Soc. Sec. Admin., 795 F.3d 1177, 1184 & n. 6 (9th Cir. 2015) (holding that there was an apparent, unresolved conflict between a job demanding Level 2 reasoning and a limitation to "one and two step tasks," but distinguishing that limitation from a restriction to "simple" or "repetitive" tasks, and noting that "[u]npublished decisions of panels of this Court and opinions from some of our sister circuits have concluded that an RFC limitation to 'simple' or 'repetitive' tasks is consistent with Level Two reasoning").

The ALJ erred in finding that plaintiff's RFC does not preclude performance of the DOT job of information clerk because that job requires Level 4 reasoning, which is inconsistent with a limitation to simple, repetitive tasks. See Zavalin v. Colvin, 778 F.3d 842, 847-848 (9th Cir. 2015) (holding that there was an apparent, unresolved conflict between a limitation to performing simple, repetitive tasks and the demands of Level 3 reasoning). However, the jobs of office helper and small products assembler constitute a significant number of alternative jobs that plaintiff can perform. See Meanel v. Apfel, 172 F.3d 1111,

9

1115 (9th Cir. 1999) (holding that between 1000 and 1500 jobs in the local area was a significant number of jobs) (citing Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479 (9th Cir. 1989)). Therefore, the ALJ's error in relying on the alternative job of information clerk was harmless. Molina v. Astrue, 674 F.3d 1104, 1121-1122 (9th Cir. 2012) (holding that an ALJ's error in failing adequately to discuss lay testimony was harmless where it was "inconsequential to the ultimate nondisability determination").

**Credibility finding**

Plaintiff contends that the ALJ made an inadequately supported negative credibility finding. [JS 33-41].

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the pain or other subjective symptoms alleged, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Treichler, 775 F.3d at 1102; Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008). "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (same). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff testified that she was "on the couch almost every day" due to pain from headaches and her other impairments, that she did no household chores, and that she did not drive. [AR 29, 117, 156, 163-166,

487, 489-490]. The ALJ found plaintiff's subjective complaints less than fully credible. He concluded that plaintiff's subjective complaints of totally disabling neck and back pain, headaches, and anxiety were not fully corroborated by the objective medical evidence. [AR 29]. Although that was a permissible consideration, the absence of medical findings to support the degree of severity alleged "is just one factor to be considered in evaluating the credibility of the testimony and complaints." Bunnell, 947 F.2d at 345 (citation omitted).

The ALJ also noted that some of plaintiff's admitted daily activities undermined the credibility of her subjective complaints. During the December 2012 hearing, plaintiff testified that she was a Jehovah's Witness. She said that she still attended meetings, although she "missed a lot," that she had been doing door-to-door witnessing regularly (three times a week for about three hours a day) during the alleged disability period and had only stopped doing it regularly about nine months earlier, and currently did phone witnessing when she felt up to it. [AR 166-172]. She watched television, went shopping twice a month with her husband, and drove to one of the hearings. [AR 29, 72, 490, 1157]. Although those activities are not necessarily transferable to a work setting, they are "grounds for discrediting [plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-1113. Therefore, the ALJ articulated legally sufficient reasons for his credibility finding.

## Conclusion

The Commissioner's decision is based on substantial evidence in the record and is free of legal error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

December 4, 2015

ANDREW J. WISTRICH
United States Magistrate Judge